■ HERBERT BRODER et al., Appellants-Respondents, v MICHAEL MACNEIL et al., Defendants, SEA TRAVELERS MARINA, INC., Respondent-Appellant, and FRANK MORACO et al., Respondents. TOYS 'R' US, Third-Party Plaintiff-Respondent, v SEA TRAVELERS MARINA, INC., et al., Third-Party Defendants-Appellants. [647 NYS2d 743] —Judgment, Supreme Court, New

York County (Walter B. Tolub, J.), entered November 2, 1994, which granted motions by defendants Toys 'R' Us and Mobil Oil for judgment *n.o.v.*, and granted the motion of defendants Moraco and Sea Travelers Marina for judgment *n.o.v.* while ordering a new trial on a limited issue, unanimously modified, on the law and the facts, the motion of defendants Moraco and Sea Travelers Marina for judgment *n.o.v.* is granted in its entirety, the complaint as against said defendants dismissed, and otherwise affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants Moraco and Sea Travelers Marina dismissing the complaint. Order and judgment (one paper), Supreme Court, New York County (Karla Moskowitz, J.), entered March 10, 1994, which granted summary judgment to Toys 'R' Us on the third-party complaint, unanimously modified, on the law and the facts, to the extent of denying judgment against third-party defendant Stewart, and granting judgment against third-party defendant Sea Travelers Marina only with regard to the claim for reimbursement for legal costs and expenses in connection with defense of the underlying action, without costs.

Plaintiffs were injured on a Sunday afternoon in 1983 when their pleasure boat exploded while docked for refueling at Mill Basin in Brooklyn. The dock and marina, owned by the City of New York (initially named as a party defendant), was leased to defendant Toys 'R' Us, whose store is adjacent to the marina on Flatbush Avenue. Toys 'R' Us subleased the premises to defendant Sea Travelers Marina, which in turn subleased the fueling facility to Mill Basin One Stop Bait, of which defendant Moraco was a corporate officer and 50% shareholder. The fuel pumps at Mill Basin were owned and maintained by defendant Mobil Oil Corp.

At the conclusion of trial, the court dismissed all of plaintiffs' claims except those alleging negligence, based on its finding that the explosion had resulted from careless smoking around the fuel facility, and defendants' failure to prevent same. Ignoring the limiting nature of the charge, the jury returned a verdict of $5.4 million in damages, apportioning liability among defendants Moraco, Toys 'R' Us, Sea Travelers and Mobil Oil, as well as plaintiff Herbert Broder. Acknowledging that the jury had misinterpreted and gone beyond the bounds of his charge, the Trial Judge granted post-verdict motions for judgment *n.o.v.* by defendants Toys 'R' Us and Mobil Oil; on similar motions by defendants Moraco and Sea Travelers, the court ruled that the verdict was contrary to the weight of the evidence and ordered a new trial against them "on the very, very

narrow issue as to the posting of no smoking signs, and as to the failure to require members of the public and employees to refrain from smoking on the dock." Judgment should have been granted dismissing the complaint against Moraco and Sea Travelers as well.

The explosion occurred in the bilge of plaintiffs' boat. The theory upon which the case was initially tried was that fumes accumulated in the bilge during refueling, which were then ignited by a spark or flame introduced to the area from some external source. A witness, Anita Perfetto, who was on the deck of another boat waiting to be refueled, testified that just before the explosion, she saw a man walking back and forth between the gas pump and plaintiffs' boat, smoking a cigarette. When the Broder refueling was completed, this man lit another cigarette and tossed the match into the space between the boat and the dock before boarding plaintiffs' boat and disappearing from view. (Broder, who happened to be a heavy smoker, denied ever smoking during a refueling.) Immediately thereafter, Perfetto heard an "ignition click" emanating from plaintiffs' cabin, followed by a boom, *after* which she saw fire on the surface of the water.

Since there was evidence of some gasoline on the dock and the water from normal spillage, plaintiffs focused on a theory that some stranger (other than Herbert Broder) had carelessly ignited a fireball outside the boat that was somehow drawn into the bilge area, causing the explosion. However, not a single witness testified as to seeing any fire on the water or the dock prior to the explosion, or even smoke in the area, and there was no physical evidence of charring to support such a theory.* Nor was there demonstrated how a fireball outside the boat could have been suctioned through the boat's vents and motor into the bilge area, absent any evidence of fire damage along that tortuous route, especially in light of Herbert Broder's testimony that the air intake blowers had not even been activated. To the contrary, the only evidence of charring, blistering or burning on the boat was on a 3-inch square piece of plywood from the bulkhead, near the entrance to the bilge, which covered the instrument panel. Defendants' expert witness, Arnold Gaba, gave unrefuted testimony that poorly spliced wiring near this most heavily charred section of bulkhead was in fact the point of ignition, where the explosion originated.

---

* The recollection of a witness, 11 years after the incident, that he saw the gasoline pump operator (defendant MacNeil) crouching by the pump just before the explosion, does not support the external fireball theory. Indeed, in his EBT, MacNeil denied seeing any fire or smoke prior to the explosion.

In the absence of all but opinion evidence in support of the theory that an external fireball had proximately caused the explosion, this record was insufficient to support a verdict in plaintiffs' favor (*see, Smith v Squire Homes*, 38 AD2d 879). An action based on circumstantial evidence must link a defendant's acts to the cause of injury by a reasonable and logical flow of inferences (*Thomas v New York City Tr. Auth.*, 194 AD2d 663). Even were we to disregard the narrow parameters of the Trial Judge's charge (which the jury ignored), we find that plaintiffs' theory of recovery rested entirely upon the speculation of their expert witness, and thus was insufficient to support this verdict (*see, Tucker v Elimelech*, 184 AD2d 636, 637-638). Having failed to prove a prima facie case by other than pure speculation, plaintiffs provided no basis for a verdict in their favor against these defendants, and the case should have been dismissed without going to the jury (*Bernstein v City of New York*, 69 NY2d 1020). Absent any rational connection between an alleged stranger smoking on the dock and the explosion that destroyed plaintiffs' boat and inflicted personal injuries, no purpose would be served in retrying this case on a theory of negligent failure to post "no smoking" signs in the vicinity of the gasoline pump.

In light of our disposition, that portion of the third-party complaint in which Toys 'R' Us sought contractual indemnification against its sublessee, Sea Travelers, and its principal officer, Stewart, based on the underlying judgment of liability, should have been denied. Similarly, any third-party claim against Stewart should have been dismissed, inasmuch as there is no evidence that he was personally involved with the operation of the marina and dock, or acted in any capacity other than as a corporate shareholder or officer of Sea Travelers.

However, summary judgment was correctly granted on that portion of the third-party complaint seeking indemnification by Sea Travelers for legal costs and expenses incurred by Toys 'R' Us in defending the underlying litigation. Under the sublease, Sea Travelers obligated itself to procure liability insurance which would have indemnified Toys 'R' Us against all claims arising out of the business of the premises, including "any and all costs, expenses and liabilities incurred in connection with any such claim or proceeding". Sea Travelers never did acquire such insurance. In refusing to pay its sublessor's cost of legal defense, Sea Travelers challenged the validity of the sublease itself for failure to satisfy a condition precedent calling for prior municipal approval. But that condition was waived by Sea Travelers' acceptance of possession of the

premises under the sublease, its payment of rent for $6^{1}/_{2}$ years, and its own sublease of the premises to another party, Mill Basin One Stop Bait. Sea Travelers even warranted, in a 1980 letter announcing its plan to sell all its stock to Stewart, that it had "a good and valid lease with Toys 'R' Us". Thus, Sea Travelers cannot avoid its obligation to pay for Toys 'R' Us' legal defense (*Roblee v Corning Community Coll.*, 134 AD2d 803, 805, *lv denied* 72 NY2d 803).

Motion for reargument granted, and upon reargument, the prior unpublished decision and order of this Court entered on June 18, 1996 is recalled and vacated. Concur—Milonas, J. P., Wallach, Kupferman and Mazzarelli, JJ.

